## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JUAN B. PAULINO,                    :
                                    :    Civil Action No. 10-5193 (DMC)
                Petitioner,         :
                                    :
        v.                          :    **OPINION**
                                    :
KAREN BALICKI, et al.,              :
                                    :
                Respondents.        :

**APPEARANCES:**

> JUAN B. PAULINO, Petitioner *pro se*
> SPN-573575/SBI-263064D
> South Woods State Prison
> 215 Burlington Road South
> Bridgeton, New Jersey 086302
>
> STEPHANIE PAIGE DAVIS-ELSON, ESQ.
> HUDSON COUNTY PROSECUTOR'S OFFICE
> 595 Newark Avenue
> Jersey City, New Jersey 07306
> Counsel for Respondents

**CAVANAUGH**, District Judge

Petitioner Juan B. Paulino ("Petitioner"), a convicted state prisoner presently confined at the South Woods State Prison in Bridgeton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his February 2007 New Jersey state court judgment of conviction. For the reasons stated herein, the Petition will be denied for lack of substantive merit.

A.   Procedural History

On November 16, 2005, a Hudson County Grand Jury returned a
six count indictment (Indictment No. 1630-11-2005) against
Petitioner as follows: (Counts One, Three and Five) first degree
aggravated assault by penetration of a child under the age of
13, in violation of N.J.S.A. 2C:14-2a(1); and (Counts Two, Four
and Six) third degree endangering the welfare of a child, in
violation of N.J.S.A. 2C:24-4a.   (Ra4-Ra5, [1] November 16, 2005
Indictment No 1630-11-2005.)

Before trial commenced, the Honorable Camille M. Kenny,
J.S.C., heard oral argument on the State's motion to admit
pretrial statements made by the victim ("A.B.") to the victim's
father ("R.B."), grandmother ("D.M."), and Detective Victoria
Regal, as well as a videotape of the victim's interview
conducted by Detective Regal.   Petitioner's counsel objected to
admission of the statements and videotape on the ground that
they were repetitive and would unfairly emphasize the State's
proofs to the jury thereby prejudicing Petitioner.   On May 23,
2006, Judge Kenny ruled that the victim's statements to D.M. and
Detective Regal were admissible, but that the victim's statement

---

[1] The State provided the relevant state court record with a list
of exhibits, hereinafter denoted as "Ra".   (See ECF No. 10-1.)

to R.B. was not admissible. (May 23, 2006 Transcript of Pretrial Motion, ECF 11-14 *SEALED*.)[2]

A trial was held before a jury and Judge Kenny, commencing on June 20, 2006, continuing on June 21 and June 22, 2006, and concluding on June 27, 2006. At the conclusion of the State's case, Judge Kenny granted defense counsel's motion for a judgment of acquittal on Counts Five and Six. However, the jury returned a verdict of guilty on the remaining Counts One through Four. (Trial Transcripts, ECF Nos. 11-16 through 11-32 *SEALED*.)

On February 9, 2007, Judge Kenny merged the convictions and sentenced Petitioner to concurrent terms of 18 years in prison with a parole ineligibility period of 85% and a five-year term of parole supervision upon release pursuant to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2. (Sentencing Transcripts, ECF Nos. 11-33, 11-34 *SEALED*.)

Petitioner filed a notice of appeal from his conviction and sentence to the Superior Court of New Jersey, Appellate Division. (Ra10-Ra18.) On August 31, 2009, the Appellate Division affirmed the conviction and remanded the matter to the Law Division for correction of the judgment of conviction.

---

[2] The transcripts of the pretrial and trial proceedings, as well as Petitioner's pro se supplemental briefs and appendices on appeal and PCR review, were filed under "seal." (ECF Nos. 11-1 through 11-34.)

(Ra346-Ra375.) An amended judgment of conviction was entered accordingly on September 18, 2009. *State v. Paulino*, 2009 WL 2707342 (N.J. Super. A.D. Aug. 31, 2009). (Ra8-Ra9.) Petitioner never filed a petition for certification with the Supreme Court of New Jersey after the Appellate Division affirmed the conviction. (Respondents' Answer at ¶ 9.)

On October 9, 2009, Petitioner filed his first state petition for post-conviction relief ("PCR"). (Ra376.) Petitioner's counsel filed a brief in support of the PCR petition on February 25, 2010, and Petitioner submitted a supplemental pro se brief on March 16, 2010. On May 3, 2010, oral argument was heard before the Honorable Joseph V. Isabella, J.S.C. In a written opinion and Order dated May 10, 2010, Judge Isabella denied the PCR petition. (Ra645-Ra664.)

Petitioner appealed from denial of his first state PCR petition (Ra699-Ra707), and while his appeal was pending before the Appellate Division, Petitioner filed his second PCR petition, *pro se*, on July 21, 2010. (Ra665-Ra680.) Judge Isabella denied the second PCR petition without oral argument or an evidentiary hearing in a written opinion dated September 28, 2010. (Ra681-Ra698.) The Appellate Division affirmed the denial of post-conviction relief in an unpublished opinion decided February 28, 2012. *State v. Paulino*, 2012 WL 611898

4

(N.J. Super. A.D. Feb. 28, 2012). It does not appear that Petitioner filed a petition for certification before the Supreme Court of New Jersey. Petitioner also did not appeal from denial of his second state PCR petition.

On October 4, 2010, Petitioner filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. This petition was filed before state court collateral review had completed. On August 10, 2011, the State filed a motion to seal certain documents in this habeas action. Specifically, the State sought to seal materials where there were repeated references to the victim and the victim's family by name, and graphic photographs taken of the five-year old sexual assault victim during a physical examination. The documents sought to be sealed included the grand jury, motion hearing and trial transcripts dated October 26, 2005, May 4, 22 and 23, 2006, June 20, 21, 22 and 27, 2006 and February 9, 2007, as well as pro se supplemental materials submitted to the Appellate Division and trial court in support of Petitioner's PCR petitions. This Court granted the motion to seal in an Order entered on February 14, 2012. (ECF No. 12.)

The State filed its answer and the relevant state court records on September 16, 2011. (ECF Nos. 10, 11.) There was no reply or traverse filed by Petitioner.

B. <u>Factual Background</u>

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will reproduce the recitation as set forth in the published opinion of the Superior Court of New Jersey, Appellate Division, decided on August 31, 2009, with respect to Petitioner's direct appeal:

> In February 2002, A.B. and her mother J.B. moved to an apartment in West New York. A.B. was three years old at the time. They shared the apartment with A.S., a friend of defendant. Defendant was their landlord, and he is thirty years older than A.B.
>
> J.B. considered defendant a friend. He visited her home once or twice a week, and he played with A.B. and read her stories in her bedroom. In J.B.'s view, defendant and A.B. also had a friendly relationship. The child had never exhibited fear in defendant's presence and, on occasion, asked whether defendant was coming to visit. Although J.B. said she never left defendant alone with A.B., once, when she was doing laundry in the basement, she left A.B. there with defendant while she went upstairs to get something. And, when defendant read stories to A.B. in her bedroom, J.B. watched television in the living room.
>
> On July 8, 2004, just after J.B. came home from work, A.B. announced that "Juan touched [her] butt." J.B., who had been intimate with defendant, did not report A.B.'s complaint.
>
> On July 9, 2004, A.B.'s father, R.B., picked the child up from daycare for his scheduled weekend parenting time, which commenced every week on Friday afternoon and ended on Saturday evening. R.B. had to go to work and planned to have A.B. stay at his mother's home that night, as she frequently did. That evening, A.B. and her grandmother, D.M., played cards. During the game, A.B. told her grandmother that "Juan had touched her 'peepee.'" Assuming

"Juan" was a child who attended day care with A.B., D.M. asked A.B. if she had told her teacher. A.B. said no and explained that "Juan" was her mother's friend. When D.M asked A.B. if she had told her mother, the child said she had but her mother did not believe her.

A.B.'s grandmother asked what had happened, and A.B. described two incidents. Defendant once took her to a bathroom in the basement, removed her pants and "touched her peepee real hard like he was pushing a button"; he did the same thing when he was reading to her in her bedroom.

A.B.'s grandfather was not in the room for this conversation, and her grandmother asked the child to tell "poppy." D.M. called J.B., who indicated that she did not believe the child. D.M. then called her son, who left work and went to his mother's home. When R .B. arrived, he assured A.B. that she could tell him anything, and he would not get mad at her. Speaking about "Juan," A.B. told her father that "somebody had touched her."

After listening to A.B., R.B. called J.B. The next day, he asked J.B. for defendant's address, but he did not call the police because he was considering "tak[ing] the law in[to his] own hands." On Sunday July 11, however, R.B. reported his daughter's complaint to the police.

On Monday July 12, Detective Victoria Regal of the Hudson County Prosecutor's Office, Sexual Assault Victim's Unit, interviewed A.B. Although the detective spoke to A.B.'s father and grandmother before interviewing A.B., she did not speak to A.B. until they were in a room equipped for recording images and sound during interviews. The recording was played at trial.

Detective Regal began the interview by asking the child her name and age. The detective turned to a blank easel, drew a picture of the face of a girl and asked A.B. to spell her first name. A.B. said she wanted to draw a picture of her "grandma," but the detective said they would start with A.B.'s house. Drawing while they talked, the detective asked A.B. who lived with her. The child named her grandmothers, her mother and A.S. She said her father lived in Bayonne.

The detective then showed A.B. a drawing of a female child, and as the detective pointed she asked A.B. to name various parts of the anatomy. A.B. identified hair, eyes and mouth but did not know what to call the pubic or anal areas. The detective suggested terms that could be used and asked A.B. to select the ones she wanted to use. A.B. selected "peepee" and "bottom."

As the detective repeated the process with a drawing of a male, A.B. interrupted to tell the detective that she had skipped the "nose" when they were labeling the girl's features.

When asked about touches she liked such as hugs and tickles, A.B. said she liked hugs from Mommy, Grandma and Daddy and being tickled by Daddy. When asked if there were "any places that she did not like to be touched," she said, on her "peepee" and "bottom."

The detective asked A.B. if anyone had ever touched her on her peepee or bottom. A.B. said, "Yes." When the detective asked who, A.B. said, "Juan." When asked how many times Juan had touched her peepee, A.B. said "one time" and in the basement bathroom of her house. "Mommy was downstairs washing rags," but "went upstairs for more soap," and "that's when he did that." After "Mommy left," defendant "turned off the lights" and touched her peepee, on her skin, not over her clothes.

A.B. also told the detective that "[defendant] did it again" upstairs in the bedroom, while he was reading her a story and when he finished the story. He touched her "very hard," "went through," and "pushed." Using anatomically correct dolls, A.B. arranged them to show their respective positions in the bathroom and bedroom, and she showed how defendant removed her pants. Although A.B. had selected the word "bottom" to use when shown the drawing, when giving the detective a narrative of what had happened A.B. used the word "butt." She said that defendant had pushed "hard ... all the way in" and that her mother was home but "watching her show."

A.B. responded "no," when asked if defendant had touched her with any other part of his body, touched her anywhere

else or touched her in locations other than the basement bathroom or the bedroom.

As the detective was ending the interview, A.B. interrupted and informed the officer the male doll she had selected was not right. She said, "Juan is not like this, he is white." As she spoke, A.B. walked to the cabinet from which the detective had earlier taken the dolls, selected another and said, Juan "is like him."

The same day, Dr. Pelliccia, a medical doctor with expertise in child abuse, examined A.B. Dr. Pelliccia found a partial transection of A.B.'s hymen, the location of which in the doctor's opinion was consistent with digital penetration.

A.B. testified at trial. While she was unable to provide a date, she recalled what she was wearing on the day that defendant touched her "peepee" in the basement bathroom, which felt "not good," and she testified that her mother was upstairs at the time. A.B. indicated that defendant had read books to her in her bedroom. She did not recall whether defendant did anything else in the bedroom, but she testified that her mother was watching television when she and defendant were in the bedroom. She could not say how she got to the basement, whom she next told about the abuse after telling her mother or what topic her parents argued about when they "fighted." There were no other questions posed by defense counsel to which A.B. could not respond.

R.B.'s testimony about his conversation with A.B. was given over defense counsel's objection. The prosecutor asked R.B. what his conversation with A.B. was about. In response to that objection, the judge told R.B. he could tell the jurors the topic without saying what was said. R.B. said, "The topic is that [A.B.] told me somebody had touched her." Defense counsel objected, and the prosecutor instructed R.B. that he was "just asking who it was about, not what." R.B. responded, "Oh who was it about? It was about a Juan."

Ziomara Perez Betances was the only witness presented by the defense. According to Betances, J.B. told her that she had never left A.B. alone with defendant and that the things others "were saying" could not have happened.

9

Betances acknowledged, however, that J.B. had mentioned that she once left A.B. in the basement with defendant while she went upstairs to get something.

During the State's closing argument, the prosecutor replayed portions of A.B's video-recorded interview with Detective Regal. The deliberating jurors asked the court if they could see again the portion of that video in which A.B. identified parts of the human anatomy; the court arranged for a replay of that segment of the interview in the courtroom.

(Ra347-RA354, August 31, 2009 Appellate Division Opinion, *State v. Paulino*, Docket No. A-4755-06T4 slip op. at 2-9.)

## II. STATEMENT OF CLAIMS

Petitioner generally asserts that the state PCR court erred in failing to find that Petitioner was denied his constitutional right to effective assistance of counsel, including "*Brady*"[3] violations. (Petition at ¶ 12(a).) Petitioner also refers to Exhibit "H" in his appendix, which is a copy of his civil complaint filed in *Paulino v. Banguera, et al.*, Civil No. 10-4784 (DMC).[4] Liberally construing the allegations of the complaint as claims for habeas relief here, it would appear that Petitioner is asserting a claim of prosecutorial misconduct in

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

[4] The 79-page civil complaint was dismissed without prejudice, on May 12, 2011, as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Petitioner's claims against the many defendants were challenging the lawfulness of his conviction that had not yet been invalidated by state court review or federal habeas review. (*Paulino v. Banguera, et al.*, Civil No. 10-4784 (DMC) at ECF Nos. 3, 4.)

obstructing and impeding Petitioner's access to grand jury
transcripts and conspiring with others to bring false charges
against Petitioner. He also alleges claims of ineffective
assistance of trial counsel in failing to file pretrial motions
to dismiss or suppress or order grand jury transcripts.
Petitioner also alleges that his PCR counsel rendered
ineffective assistance in his PCR proceedings by delaying
proceedings and concealing exculpatory documents and refusing to
engage an investigator to obtain statements from witnesses.
(*Paulino v. Banguera, et al.,* Civil No. 10-4784 (DMC) at ECF No.
1, ¶ 4.)

The State argues that the petition fails to state with
specificity his grounds for habeas relief, relying instead on a
civil complaint that has been dismissed. The State further
contends that the issues raised in the civil complaint are
essentially similar to the grounds raised by Petitioner on
direct review and collateral review in state court. However,
because Petitioner never appealed these claims to the Supreme
Court of New Jersey, the claims should be considered
unexhausted. Despite this failure to exhaust, Petitioner's
request for habeas relief are otherwise subject to dismissal on
the merits pursuant to 28 U.S.C. § 2254(b)(2).

### III. STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Campbell v. Burris*, 515 F.3d 172, 185-86 (3d Cir. 2008); *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998). Thus, because Petitioner is proceeding as a *pro se* litigant in this matter, the Court will accord his habeas petition the liberal construction intended for *pro se* petitioners.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court has jurisdiction to entertain a petition for federal habeas relief as follows:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

Section 2254(d) of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012).

"Clearly established Federal law" should be determined as of the date of the relevant state court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. *Greene v. Fisher*, ---U.S. ----, 132 S.Ct. 38, 181 L.Ed.2d 336 (2011); *Cullen v. Pinholster*, 563 U.S. ----, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Jamison v. Klem*, 544 F.3d 266, 274 (3d Cir.2008). The state court judgment must

contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, *Williams*, 529 U.S. at 405, although district and appellate federal court decisions evaluating Supreme Court precedent may amplify such precedent, *Hardcastle v. Horn,* 368 F.3d 246, 256 n. 3 (3d Cir. 2004)(citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999)). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155. The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Jamison*, 544 F.3d at 274-75. Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application' of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a

legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407. A showing of clear error is not sufficient. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly. *See Harrington v. Richter*, 562 U.S. ----, ----, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011) (Under § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." (quoting *Williams* at 410)); *see also Thomas v. Varner*, 428 F.3d 491, 497 (3d Cir. 2005); *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 S.Ct. at 786-87.

The Supreme Court repeatedly has reiterated the deference that the federal courts must accord to state court decisions. *See Felkner v. Jackson*, ---U.S. ----, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011)("AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."); *Cullen v. Pinholster*, 131 S.Ct. at 1398; *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013), *cert. denied*, *Lamas v. Eley*, 134 S.Ct. 254 (U.S. Oct. 7, 2013). *See also Harrington*, 131 S.Ct. at 786 ("We must use habeas corpus as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)("whether the trial judge was right or wrong is not the pertinent question under AEDPA"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold."); *Lockyer*, 538 U.S. at 75 ("it is not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was erroneous."). Further, AEDPA's standard applies even where "the state court analyzed and rejected a habeas

petitioner's federal claims on the merits but gave 'no indication of how it reached its decision.'" *Grant v. Lockett*, 709 F.3d 224, 230 (3d Cir. 2013)(quoting *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012)).

A state court decision is based on "an unreasonable determination of the facts" only if the state court's factual findings are "'objectively unreasonable in light of the evidence presented in the state-court proceeding.'" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)(citing, *inter alia*, 28 U.S.C. § 2254(d)(2)). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); see also *Rice v. Collins*, 546 U.S. 333, 339 (2006) (stating that petitioner bears the burden of "rebutting the presumption by 'clear and convincing evidence.'" (quoting 28 U.S.C. § 2254(e)(1)); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001)(factual determinations of state trial and appellate courts are presumed to be correct). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000). In

determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

Even if the petitioner is entitled to habeas relief under AEDPA, the court may grant the writ only if the error was not harmless. Under the harmless error standard, the court must "assess the prejudicial impact of [the] constitutional error in [the] state-court criminal trial." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). The court should hold the error harmless unless it led to "actual prejudice," in the form of a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)(quotation omitted); *Eley v. Erickson*, 712 F.3d at 847.

## IV.  DISCUSSION

### A.  Prosecutorial Misconduct

Petitioner seems to be asserting *Brady* violations on the part of the state prosecutor. Namely, Petitioner alleges that the prosecutor has obstructed Petitioner's access to grand jury transcripts. He also alleges that the prosecutor's office conspired with others to bring false charges against Petitioner. These broad claims were never expressly raised by Petitioner on state court review, and thus are unexhausted.

However, Petitioner presented some aspects of a prosecutorial misconduct claim on direct appeal that relates to the broader claims asserted in this habeas petition. Namely, in his *pro se* submissions on direct appeal, Petitioner argued that the prosecutor's office should have "dismissed themselves" from the case because "they had reviewed and gathered all testimony and evidence from all the witness[es] and the minor victim." *State v. Paulino*, 2009 WL 2707342 at *4. (Ra356.) Petitioner also argued that the prosecutor misinformed and withheld facts from the grand jury to obtain an indictment of Petitioner. (*Id.*) The Appellate Division concluded on direct appeal that these asserted claims by Petitioner lacked sufficient merit to warrant discussion in a written opinion.

"[T]he suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This rule requires prosecutors to disclose known material information favorable to the accused and "to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Thus, *Brady* expressly proscribes withholding evidence "favorable to an accused" and "material to [his] guilt or to punishment." *Cone*

*v. Bell*, 556 U.S. 449, 451 (2009). To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the State suppressed the evidence, "either willfully or inadvertently"; and (3) "prejudice ... ensued." *Strickler v. Greene*, 527 U.S. 263, 281–282 (1999); *see Banks v. Dretke*, 540 U.S. 668, 691 (2004). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Thus, nondisclosure merits relief only if the prosecution's failure "'undermines confidence in the outcome of the trial.'" *Kyles v. Whitly*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678).

In this case, Petitioner has not set forth any competent evidence to demonstrate a *Brady* violation. Petitioner attaches a civil complaint filed in *Paulino v. Banguera, et al.*, Civil No. 10-4784 (DMC), which alleges that the prosecutor proceeded with Petitioner's prosecution despite inconsistencies in statements. That complaint also alleges that the prosecutor

altered reports and testimony of witnesses and resubmitted them to a "secret" grand jury, and that the prosecutor's office has obstructed Petitioner's efforts to obtain a copy of the grand jury transcripts. (Complaint at ¶¶ 4.e.1-19.) These allegations are merely conjecture and Petitioner has not shown any reliable evidence to support these claims. Consequently, habeas relief is not warranted.

Finally, regarding Petitioner's claim that the prosecutor withheld evidence from the grand jury, Petitioner also is not entitled to habeas relief. The Fifth Amendment right to an indictment by a grand jury does not apply to state criminal prosecutions. See *Apprendi v. New Jersey*, 530 U.S. 466, 477 n. 3 (2000); *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Moreover, under New Jersey law, prosecutors are not generally required to provide the grand jury with evidence on behalf of the suspect, see *State v. Hogan*, 144 N.J. 216, 235 (1996), and an indictment should be disturbed only on the clearest and plainest ground. See *State v. Womack*, 145 N.J. 576, 588 (1996). Such a duty is triggered "only in the rare case in which the prosecutor is informed of evidence that both directly negates the guilt of the accused and is clearly exculpatory." *Hogan*, 144 N.J. at 237. That is not the case here. Petitioner has not presented any competent evidence that plainly exculpates him

21

from the convicted crimes, which were allegedly known by the prosecution. Therefore, Petitioner's claims regarding prosecutorial misconduct is denied for lack of substantive merit.

## B. Ineffective Assistance of Counsel

Petitioner next alleges that he was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel failed to file pretrial motions to dismiss or suppress or order grand jury transcripts. To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that (1) counsel's performance was so deficient as to deprive him of the representation guaranteed to him under the Sixth Amendment of the U.S. Constitution, and (2) the deficient performance prejudiced the defense by depriving the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show prejudice under *Strickland*, Petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rainey v. Varner*, 603 F.3d 189, 197–98 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be

relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *Ross v. Varano*, 712 F.3d 784, 797-98 (3d Cir. 2013).

"Since *Strickland*, the Supreme Court and the Third Circuit have emphasized the necessity of assessing an ineffectiveness claim in light of all the circumstances." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013); *Siehl v. Grace*, 561 F.3d 189, 195 (3d Cir. 2009)(citing cases). When a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 131 S.Ct. at 785). For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* (internal quotation marks omitted)(emphases in original). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen v. Pinholster*, 131 S.Ct. at 1403). Federal habeas courts must "take a highly deferential

look at counsel's performance" under Strickland, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

In this case, Petitioner raised his ineffective assistance of trial counsel claim in his state PCR proceedings. In those proceedings, Petitioner alleged that his trial counsel failed to meet with him to sufficiently prepare a defense, and that counsel failed to retain an expert witness in the field of child sexual abuse to counter the State's expert. The PCR court rejected Petitioner's claims, concluding that Petitioner's allegations were simply "vague, conclusory, and unsubstantiated assertions that his trial counsel was ineffective." (Ra659.) Indeed, the PCR court found that the record showed thorough representation by trial counsel before and during trial proceedings. (*Id.*)

Specifically, the court noted counsel's participation in a three-day motion hearing on the admissibility of prior statements by the victim to her grandmother and father and the videotaped interview with Detective Regal. Counsel conducted extensive cross-examinations of all witnesses, consulted with Petitioner routinely during the cross-examinations, and argued vigorously against admission of the statements. (Ra659-Ra660.) The PCR court further mentioned that Petitioner himself decided

to reject a plea offer before trial, after his trial counsel had provided Petitioner with all discovery related to the case against him. Finally, the PCR court remarked that counsel gave opening and closing statements, conducted extensive cross-examinations, and called a favorable witness for Petitioner. The court stated: "It defies logic that Mr. Dell'Italia would have conducted all of these actions, particularly calling a witness who had not been present during any of the aforementioned circumstances, without conducting some degree of discussion in regards to trial strategy with the Petitioner or conducting an investigation." (Ra660.)

With regard to Petitioner's *pro se* arguments that trial counsel was ineffective for failure to properly investigate and failure to file a motion to dismiss the indictment, the PCR court likewise found Petitioner's claims "unpersuasive" and supported only by "vague, conclusory, and unsubstantiated statements of the Petitioner." (Ra662-Ra663.) The PCR court also rejected Petitioner's claim that counsel was ineffective for failing to retain an expert to counter the State's expert, finding that trial counsel effectively cross-examined the State's expert, Dr. Pelliccia, to show that the victim's injuries could have occurred by other means than digital

penetration, and that it was not rare to find that a five-year old girl's hymen was not intact. (Ra661.)

The Appellate Division substantially affirmed the PCR court's decision, applying the standard set forth in *Strickland*, and in *State v. Fritz*, 105 N.J. 42 (1987). Commenting further, the Appellate Division stated:

> Defendant takes the position that defense counsel's showing up at trial, going "through the motions," and providing "some minimal amount of advocacy at trial" does not rise to the level of "proof that counsel fulfilled his duty of meeting and consulting with defendant." According to defendant, as a result of the lack of consultation, "defendant was essentially uncounseled when he made the decision to reject the State's plea offer and was then only marginally represented at trial by an attorney who had not communicated with him regarding trial strategy." This unsubstantiated rhetoric is simply a continuation of the vague, conclusory statements referenced by Judge Isabella throughout his opinion. Defendant does not explain what additional defenses could have been advanced had trial counsel met with him and provides no specifics regarding his decision to reject the State's plea offer and go to trial. It is apparent from the record that trial counsel sufficiently consulted with defendant and zealously represented him throughout the litigation.

> It also appears from the record that defense counsel's trial strategy was to effectively cross-examine the State's forensic expert rather than retain his own expert in the area of child sexual abuse. Defendant is not entitled to an evidentiary hearing as a fishing expedition to ascertain why his attorney decided to forgo an expert and then analyze his trial strategy. *See State v. Cusumano*, 369 N.J. Super. 305, 310 (App. Div.) (citing *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L. Ed.2d 126, 135 (1976); *State v. Buonadonna*, 122 N.J. 22, 38 (1991)) ("In determining whether [a petitioner] has met the first prong of the Strickland/Fritz test, an appellate court will not second-guess defense counsel's trial decisions which

26

rest upon strategic or tactical considerations."), *certif. denied*, 181 N.J. 546 (2004).

*State v. Paulino*, 2012 WL 611898 at *3.

Having carefully reviewed the state court record, and considering the claims asserted by Petitioner herein, this Court finds that Petitioner has failed to make a prima facie showing of ineffectiveness of trial counsel under the *Strickland* standard. Petitioner has not provided any factual basis or even conjecture as to what further investigation or defenses were necessary other than to generally refer to unidentified witnesses for statements to be taken. "[C]ounsel has a duty to make [only] reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. *See also Echols v. Ricci*, 2011 WL 3678821 (D.N.J. Aug. 19, 2011), *aff'd*, 2012 U.S. App. LEXIS 14803 (3d Cir. July 19, 2012). Moreover, as the Appellate Division noted, his counsel's strategic decision not to call an expert witness is entitled to deference under *Strickland*. *See Henderson v. DiGuglielmo*, 138 F. App'x 463, 470 (3d Cir. 2005). Simply stated, Petitioner has failed to demonstrate deficient performance by trial counsel on any of these conclusory and unsubstantiated claims that would have had any effect of undermining the verdict.

Therefore, this Court concludes that the determinations of the state PCR court and appellate court in denying Petitioner's ineffectiveness of counsel claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law under *Strickland*, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Parker*, 132 S.Ct. at 2151; *Williams*, 529 U.S. at 413. Accordingly, the Court will deny federal habeas relief on Petitioner's claims of ineffective assistance of trial counsel because his claims are substantively meritless.

Finally, Petitioner asserts that his state PCR counsel provided ineffective assistance of counsel. Petitioner generally alleges that his PCR counsel failed to provide adequate representation and acted to delay, protract and impede his state PCR proceedings, which included the concealment of exculpatory documents and refusing to retain an investigator to obtain statements from witnesses. (*Paulino v. Banguera, et al.*, Civil No. 10-4784 (DMC), Complaint at ¶¶4.o.1-15.)

Section 2254 explicitly excludes from the scope of federal habeas relief a claim based upon ineffective assistance of PCR counsel. "The ineffectiveness or incompetence of counsel during

Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). *See also Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991) (holding that there is no constitutional right to counsel in state post-conviction relief proceedings and, consequently, that ineffective assistance of counsel in state post-conviction relief proceedings does not provide a ground for federal habeas relief); *Taylor v. Horn*, 504 F.3d 416, 437 n. 17 (3d Cir. 2007) (noting same and citing *Coleman*).

In this case, to the extent that Petitioner relies on *Martinez v. Ryan*, --- U.S. ----, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), such reliance is misplaced. In *Martinez*, the Supreme Court held that ineffective assistance of counsel in an initial-review collateral proceeding, on a claim of ineffective assistance of trial counsel, may establish "cause" for a procedural default in a federal habeas proceeding as to that claim, only. *Id.* at 1315 (limiting *Coleman, supra*). The rule adopted in *Martinez* does not extend, however, to "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 1320.

Therefore, where Petitioner's claims of ineffective assistance of PCR counsel relate to PCR counsels' alleged errors in failing to retain an investigator, concealing exculpatory documents and obstructing or delaying state PCR proceedings,[5] such claims must be denied pursuant to 28 U.S.C. § 2254(i).

## V. CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

---

[5] The Court further notes that Petitioner has not articulated the nature or kind of exculpatory material allegedly concealed, nor has he identified the additional statements or witnesses purportedly requiring an investigator. Like Petitioner's claims regarding his trial counsel's performance, Petitioner's claims pertaining to his PCR counsel are vague, conclusory and unsubstantiated assertions.

## IV. CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue.   An appropriate Order follows.

DATE:  JAN. 15, 2014

DENNIS M. CAVANAUGH
United State District Judge